# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **AUGUST B. TOSCANO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Number: 2:16-CV-1284-MHH** |
| | ) | |
| **REGIONS FINANCIAL** | ) | |
| **CORPORATION, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

The order concerns a motion in which defendants Regions Financial Corporation and Regions Bank (collectively Regions) ask the Court to dismiss plaintiff August Toscano's second amended complaint. (Doc. 56). Absent outright dismissal, Regions asks the Court to strike Mr. Toscano's jury demand. (Doc. 57). Mr. Toscano opposes the motion to dismiss but not the motion to strike the jury demand. (Doc. 65). For the reasons stated below, the Court grants the motion to dismiss in part and grants the motion to strike the jury demand.

## I. FACTUAL BACKGROUND

Mr. Toscano, a native of Brazil, currently is a citizen of Florida. (Doc. 57, p. 3). Mr. Toscano asserts that he is a member of protected classes based on his

race, ethnicity, and national origin. (Doc. 53, p. 7). From 2006 until his termination in July 2014, Mr. Toscano worked for Regions Bank as the "Human Resources Executive for the East Region." (Doc. 53, pp. 2, 7). Regions Bank is a subsidiary of Regions Financial Corporation, a Delaware corporation headquartered in Birmingham, Alabama. (Doc. 53, p. 8).

According to Mr. Toscano's second amended complaint, two factual narratives support his claims. First Mr. Toscano alleges that executives at Regions engaged in fraudulent business practices while Mr. Toscano worked for the bank. One of these practices, the "vendor kick-back scheme," involved a recruiting service that paid kickbacks to certain Regions's executives in exchange for those executives' agreement to pay inflated invoices that the recruiter submitted to Regions. (Doc. 53, p. 3). Another practice, the "loan fraud scheme," involved Regions's attempts to manipulate its apparent profitability by reporting uncollectable loans as collectable on its balance sheets. (Doc. 53, p. 3). Mr. Toscano alleges that he became aware of these practices and that he reported the issues to other executives at Regions. (Doc. 53, pp. 10-17). Mr. Toscano contends that Regions retaliated against him because he reported these illegal business practices.

Second, Mr. Toscano alleges that executives within Regions's management were "engaging in discriminatory, sexist, demoralizing, and degrading behavior

towards . . . female employees." (Doc. 53, p. 19). Mr. Toscano asserts that he reported complaints several co-workers made to him concerning the offensive or inappropriate behavior of Regions's executives towards female employees. (Doc. 53, p. 19-20). As a regional HR Executive, Mr. Toscano also investigated and reported allegations of racial discrimination in Regions's hiring practices in Georgia. (Doc. 53, pp. 23-24). Mr. Toscano alleges that executives at Regions responded to his reports by attempting to discredit them and then by retaliating against him. (Doc. 53, pp. 20-21, 24-26).

Mr. Toscano alleges that after he reported the illegal business practices and the complaints of sex and race discrimination to Regions executives, he "was suddenly ostracized" and told by his superiors that "he could not be trusted and [that he] was not a good 'cultural' fit at Regions." (Doc. 53, p. 22). After Mr. Toscano reported the allegations of misconduct at Regions, he began to receive lower performance ratings, "was ignored in meetings[,] and removed from key projects." (Doc. 53, p. 22). Mr. Toscano alleges that Regions was attempting to create a pretext for his eventual termination. (Doc. 53, p. 23). In addition, Mr. Toscano alleges that his termination was based in part on his efforts to report misconduct within the company. (Doc. 53, p. 4). [1]

---

[1] In addition to his retaliation rationales, Mr. Toscano alleges that Regions terminated him because of his race and national origin. (Doc. 53, p. 32). Beyond his assertion that he is a

On July 15, 2014, Regions terminated Mr. Toscano without cause. (Doc. 53, p. 28). Because Regions terminated Mr. Toscano without cause, Regions became obligated to provide Mr. Toscano with several forms of severance compensation as well as certain benefits in accordance with a Severance Protection Agreement (SPA) that the parties executed in 2007. (Doc. 53, p. 28). On September 26, 2014, consistent with the terms of the SPA, Mr. Toscano executed a "General Release" of any claims he had against Regions. (Doc. 56-1, pp. 36-37). Regions argues that this release bars Mr. Toscano's present action. (Doc. 56-1, p. 2). Mr. Toscano, in turn, argues that the release did not become effective because Regions did not provide all of the payments and benefits that the SPA required. (Doc. 65, p. 2).

Mr. Toscano sued Regions in Florida state court on December 31, 2015, asserting six causes of action: (1) retaliation in violation of Title VII; (2) discrimination in violation of Title VII; (3) retaliation under the False Claims Act; (4) retaliatory discharge in violation of the Dodd-Frank Act; (5) retaliation in violation of Florida law; and (6) breach of contract. (Doc. 2; Doc. 53). Regions removed Mr. Toscano's case to the Middle District of Florida on February 12, 2016. (Doc. 1). On Regions's motion, the District Court for the Middle District of Florida transferred the case to this Court. (Docs. 27, 33). By joint stipulation of

member of protected classes, however, Mr. Toscano does not make factual allegations particular to this claim. Instead he appears to rely on the allegations underlying his claims for retaliation as the predicates for his claim of race discrimination. (*See* Doc. 65, pp. 21-22).

the parties, Mr. Toscano filed an amended complaint on January 12, 2017. (Doc. 39). With the Court's leave, Mr. Toscano filed a second amended complaint on April 7, 2017. (Doc. 53). Regions now asks the Court to dismiss the second amended complaint. (Docs. 56, 57).

## II. STANDARD OF REVIEW

In ruling on the defendants' motion to dismiss, the Court must consider whether Mr. Toscano has alleged facts that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts that Mr. Toscano alleges must "allow [the court] to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the motion to dismiss stage, the Court "must and do[es] assume that any well-pleaded allegations in the amended complaint are true." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1284 (11th Cir. 2010).

When evaluating a motion to dismiss, a court may consider certain materials outside of the complaint without converting a motion to dismiss into one for summary judgment. *See Russo v. Fifth Third Bank*, 634 Fed. Appx. 774, 775 n.2 (11th Cir. 2015).

> [W]here the plaintiff refers to certain documents in the complaint and
> those documents are central to the plaintiff's claim, then the Court
> may consider the documents part of the pleadings for purposes of
> Rule 12(b)(6) dismissal, and the defendant's attaching such
> documents to the motion to dismiss will not require conversion of the
> motion into a motion for summary judgment.

*Crespo v. Coldwell Banker Mortg.*, 599 Fed. Appx. 868, 872 n.1 (11th Cir. 2014)

(quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369

(11th Cir. 1997)).

## III. DISCUSSION

### a. Whether the General Release Bars Mr. Toscano's Claims

Although Mr. Toscano did not attach copies of the SPA or the general

release to his complaint, both agreements are central to Mr. Toscano's claim for

breach of contract. (*See* Doc. 53, pp. 28-29, 39-41). Regions attached these

documents to its motion to dismiss. (Doc. 56-1, pp. 36-37; Doc. 69-1). In

construing the effect of the SPA and the release, the Court relies on general

principles of contract law. *See In Re Managed Care*, 756 F.3d 1222, 1232 (11th

Cir. 2014). "District Courts must construe contracts to give effect to the parties'

intentions." *In Re Managed Care*, 756 F.3d at 1232. The SPA states that it "will

be governed by and construed in accordance with the law of the State of Alabama

applicable to contracts made and to be performed entirely within that state." (Doc.

69-1, pp. 13-14). Because the release is an outgrowth of SPA, (*see* Doc. 56-1, p. 36), the Court also will use Alabama contract law to construe the release.

Under Alabama law, "[a] previous settlement of claims is an affirmative defense to an action." *Cherry v. Pinson Termite & Pest Control, LLC*, 206 So. 3d 557, 565 (Ala. 2016). "'When parties . . . make a final settlement between themselves, such settlement is as binding on them in many respects as a decree of a court.'" *Oaks v. City of Fairhope*, 515 F. Supp. 1004, 1032 (S.D. Ala. 1981) (quoting *Burks v. Parker*, 68 So. 271, 272 (Ala. 1915)). A valid settlement agreement is conclusive as to any claims that the parties intended to include within the terms of their agreement. *Ex Parte PinnOak Res., LLC*, 26 So. 3d 1190, 1200 (Ala. 2009).

### 1. The Scope and Validity of the Release

The language of Mr. Toscano's agreement with Regions states that he released:

> any and all manner of action, causes of action, suits, claims and demands whatsoever heretofore existing, now existing or which may hereafter ripen, directly or indirectly, from the beginning of time until the date hereof whether arising under any applicable provisions of statutory or common law with the exception of any employee benefits which cannot be freely alienated under ERISA.

(Doc. 56-1, p. 37). Mr. Toscano executed the release on September 26, 2014, several months after his termination on July 15, 2014. (Doc. 56-1, p. 37; Doc. 53, pp. 2, 6). Mr. Toscano does not dispute that all of the facts underlying his claims for retaliation and discrimination occurred while he was employed at Regions. Consequently, these claims either existed when Regions terminated Mr. Toscano, or the claims ripened shortly after his termination as in the case of those claims covered by his EEOC charge. (Doc. 65, p. 9). Either way, the claims Mr. Toscano presents in counts I, II, III, IV, and V of his second amended complaint are covered by the plain language of the release. Because Mr. Toscano asserts causes of action granted to him by federal remedial statutes in those counts, the Court must examine the circumstances surrounding his execution of the release. *See Sparks v. Sunshine Mills, Inc.*, 2013 WL 4760964, at *7 (N.D. Ala. Sept. 4, 2013).

To conclude that Mr. Toscano has waived his federal rights, the Court must find that Mr. Toscano's assent to the release provision was knowing and voluntary. *Sparks*, 2013 WL 4760964, at *7 (citing *Bledsoe v. Palm Beach City*, 133 F.3d 816, 819 (11th Cir. 1998)). In examining this issue, the Court may consider:

> the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

*Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir. 2007) (quoting *Beadle v. City of Tampa*, 42 F.3d 633, 635 (11th Cir. 1995) (internal quotation marks omitted)).

Here, the release is fewer than two pages long. (Doc. 56-1, pp. 36-37). Mr. Toscano worked as an executive within Regions HR department, a department where he likely was exposed to agreements incident to ending employment such as the release at issue. (Doc. 53, p. 7). The release states that Mr. Toscano had fifty five days in which to review and consider the terms of the release. (Doc. 56-1, p. 36). Additionally, the release states that Mr. Toscano could have disaffirmed the release within seven days of signing it. (Doc. 56-1, p. 36). The defendants allege that Mr. Toscano was represented by counsel when he signed the release, (Doc. 69, pp. 12-13), but even if he was not, Mr. Toscano had ample time to consider the release and to consult an attorney if he was confused by the terms of the release or its implications for his then-extant claims against Regions. Additionally, Mr. Toscano acknowledges that "[h]ere, there is no claim of fraudulent inducement," regarding the circumstances under which he executed the release. (Doc. 65, p. 18). The record does not indicate that Regions exerted undue pressure on or otherwise misled Mr. Toscano to induce him to sign the release.

Under these circumstances, the Court is satisfied that Mr. Toscano's release of his claims and the consequent waiver of his remedial rights was knowing and voluntary. *Cf. Myricks v. Fed. Reserve Bank of Atlanta*, 2006 WL 5668813, at *6 (N.D. Ala. Feb. 6, 2006) (concluding that plaintiff's waiver of federal remedial rights was knowing and voluntary where plaintiff had the release agreement for 61 days before signing it). Therefore, the Court concludes that the release is facially valid.

### 2. Conditions Precedent

Notwithstanding the release's apparent validity, Mr. Toscano argues that he is not bound by the release because the agreement is subject to a condition precedent that never occurred, namely Regions's complete performance of its obligations under the SPA. Relying on the allegations supporting his breach-of-contract claim, Mr. Toscano claims that Regions still owes him certain payments and benefits under the SPA. (Doc. 53, pp. 39-41; Doc. 65, pp. 10-11). In the absence of Regions's complete performance, Mr. Toscano argues that he never became obligated to release his claims against Regions so that he may bring his claims in the present action. (Doc. 65, p. 11). The Court does not agree with this reading of the release.

Under Alabama law, "condition precedents are not favored in contract law, and will not be upheld unless there is clear language to support them." *Lemoine Co. of Ala., LLC v. HLH Constructors, Inc.*, 62 So. 3d 1020, 1025 (Ala. 2010) (quoting *Federal Ins. Co. v. I. Kruger, Inc.*, 829 So. 2d 732, 740 (Ala. 2002)) (internal marks omitted).  Mr. Toscano contends that the release clearly establishes conditions for performance.   (Doc. 65, pp. 10-11).  To support his contention, Mr. Toscano cites a provision in the release which reads as follows:

> NOW, THEREFORE, for good and valuable consideration payable to Employee under the SPA, Employee does, *upon receipt of all such payments and performance of employer promises undertaken in the SPA*, for himself and any successors, assigns, heirs, beneficiaries, or personal representatives hereby release and forever discharge Employer (defined as "Company and Affiliates of Employer") from any and all manner of action, causes of action, suits, claims and demands whatsoever heretofore existing, now existing or which may hereafter ripen, directly or indirectly, from the beginning of time until the date hereof whether arising under any applicable provisions of statutory or common law with the exception of any employee benefits which cannot be freely alienated under ERISA.

(Doc. 56-1, pp. 36-37; Doc 65, p. 10) (emphasis added).

Mr. Toscano reads the "upon receipt of all such payments and performance" clause to require Regions to render full performance *before* Mr. Toscano becomes obliged to release his claims against the company.   Although Mr. Toscano's reading of the release is possible in isolation, when read in the context of the parties' entire agreement, the quoted language does not establish that the parties

intended Regions's full performance to be a condition precedent to Mr. Toscano's release obligation.

The release is a product of the SPA, a fact evidenced by the seven references to the SPA in the two-page release. (Doc. 56-1, pp. 36-37). The SPA expressly references the release:

> (b) *Condition.* The Company's obligation to pay or provide the payments and benefits described in Section 4(a) shall be contingent upon your signing (and failing to revoke during any applicable revocation period) within 55 days following separation from service, a general release of claims in favor of the Company and its affiliates. In the event the general release of claims in favor of the Company and its affiliates is not signed, or is revoked within the 55 days following separation from service, you will forfeit all rights to the payments and benefits described in Section 4(a).

(Doc. 69-1, p. 20). This language indicates that Mr. Toscano's signature on the release is the condition precedent to the parties' agreement, not Regions's provision of the benefits under the SPA. This conclusion is bolstered by the fact that the release repeats this very language, stating "the SPA conditions payment of severance benefits payable under paragraph 4(a) of the SPA on signing within a specified period after termination of employment (and not revoking) a 'general release of claims in favor of the Company and its affiliates.'" (Doc. 56-1, p. 36) (quoting Doc. 69-1, p. 20).

There is no evidence that Regions intended to remain amenable to suit by former employees while it provided benefits pursuant to the SPA. Rather, as the language quoted above indicates, Mr. Toscano had to release his claims against Regions before he could receive benefits under the SPA. In light of this language, Mr. Toscano's contention that the release unambiguously conditions his obligations on Regions's full performance is untenable. The Court reads the language quoted by Mr. Toscano as a statement of the consideration that Regions will pay to Mr. Toscano, not as a condition that must occur before Mr. Toscano becomes obligated to perform.

### 3. Whether Regions Committed a Material Breach of the SPA or the Release

Although Regions's performance is not a condition precedent, the release may not bar Mr. Toscano's claims for retaliation and discrimination if Regions committed a material breach of the release or the SPA. "For there to be a breach of the settlement agreement that is sufficient to discharge a party from h[is] obligations under the contract, and that would allow h[im] to open up the underlying claims for further adjudication, the breach must be 'material.'" *Gray v. City of Dothan*, 2016 WL 4231706, at *6 (M.D. Ala. Aug. 9, 2016) (quoting *Malladi v. Brown*, 987 F. Supp. 893, 905 (M.D. Ala. 1997)). A breach is material "only when an injured party has sustained a substantial injury by the breach," such that the value of the contract to the injured party has been substantially impaired.

*See Malladi*, 987 F. Supp. at 905 n.11 (citing Restatement (Second) of Contracts § 243(4) (1979)).  When a breach is not material, the non-breaching party retains its obligations under the agreement and may seek a remedy for the breach only in an action for damages.  *See Gray*, 2016 WL 4231706, at *6 (quoting *Ferrell v. Sec'y of Def.*, 662 F.2d 1179, 1181 (5th Cir. Dec. 7, 1981)).

Mr. Toscano alleges that Regions has not fully performed under the SPA and the release, and Regions acknowledges that its performance under these agreements was "substantial" but not complete.  (Doc. 56-1, p. 8; Doc. 65, pp. 10-11).  Pursuant to the SPA, Regions paid Mr. Toscano "$274,655.28 less statutory deductions."  (Doc. 56-1, p. 2).  Regions claims that this amount represents "one times the base pay in annual salary at the rate in effect at the time of termination and the balance of Plaintiff's salary prorated through the terminated dated [*sic*], to the extent not already paid."  (Doc. 56-1, pp. 7-8) (internal quotations omitted).  Mr. Toscano acknowledges receipt of this payment but alleges that under the SPA, Regions still must release his 401K funds, pay for his reasonably incurred legal fees and expenses in this action, provide him with COBRA payments at the employee rate, and pay him the bonuses due under the management incentive and long term incentive plans.  (Doc. 65, p. 15; Doc. 53, pp. 40-41).  Mr. Toscano claims that the SPA bonus is typically 50% of the employee's base salary upon separation.  (Doc. 53, p. 40).  Mr. Toscano does not indicate the value of Regions's

other remaining forms of performance except to say that he "is owed substantially more money and benefits under the SPA." (Doc. 65, p. 11).

At this stage, the Court is unable to assess whether Regions in fact breached the SPA or the release and whether any such breach was material. Because the Court must accept all well-pleaded allegations and draw all permissible inferences in Mr. Toscano's favor, the Court concludes that Regions has not shown that it is entitled to a dismissal based on the release alone.

Regions supplements its argument that the release bars Mr. Toscano's claims with its argument that Mr. Toscano is required to "tender back" the payment that Regions already made under the SPA before Mr. Toscano may pursue his claims for retaliation and discrimination. Alabama case law supports the general assertion that a plaintiff cannot circumvent a prior release or settlement agreement while retaining the consideration he was paid pursuant to that agreement. *See, e.g.*, *Daniel v. Scott*, 455 So. 2d 30, 33 (Ala. Civ. Ct. App. 1984) ("He cannot ratify in part; cannot hold the fruits of the transaction and deny to the other the benefits accruing to him...."). But implicit in this statement is the assumption that the releasing party actually received the fruits or substantially all of the fruits for which he bargained. Regions has paid Mr. Toscano a large sum of money, but without the benefit of more evidentiary context, the Court is unable to assess whether this payment gave Mr. Toscano the benefit of his bargain,

If the evidence shows that Regions did not breach the SPA or that its breach was immaterial, then Mr. Toscano retains his obligation under the release. In such case, Mr. Toscano likely would need to argue for rescission of his agreement with Regions to pursue his claims; rescission would require, at a minimum, that Mr. Toscano return Regions's payment. *See, e.g.*, *Thompson v. DC America, Inc.*, 951 F. Supp. 192, 195–96 (M.D. Ala. 1996) ("Under Alabama law, the court finds that the plaintiff has two options. She can ratify the settlement agreement, which contains a general release, and keep the settlement proceeds as consideration for it, or she can rescind the settlement agreement and return the money."). If, however, the evidence indicates that Regions committed a material breach of the SPA or the release, then Mr. Toscano would be relieved of his obligations under those agreements by virtue of that breach. For the purpose of resolving the motion to dismiss, the Court concludes that Mr. Toscano's retention of the Regions's payment does not preclude him from proceeding with his claims.

For the foregoing reasons, the Court concludes that the existence of the release between the parties does not entitle Regions to a dismissal at this stage. Because Regions makes no further arguments for dismissal of Count III, the Court denies Regions's motion with respect to Count III of Mr. Toscano's second amended complaint.

### b. Whether Mr. Toscano Exhausted His Administrative Remedies For his Title VII Retaliation and Discrimination Claims

Regions argues that Mr. Toscano has not satisfied the statutory requirements for his Title VII retaliation and race-discrimination claims because Mr. Toscano filed this suit more than ninety days after receiving notice that the Equal Employment Opportunity Commission had declined to take further action on his charge. (Doc. 56-1, p. 15). To support its argument, Regions attaches a November 2014 letter from the EEOC to Mr. Toscano which states that the EEOC will take no further action on Mr. Toscano's charge due to his settlement with Regions. (Doc. 56-1, p. 40).

Mr. Toscano does not dispute the letter's authenticity, but he argues that the letter is not integral to his claims. (Doc. 65, p. 20). The Court disagrees. An EEOC letter purporting to dismiss a complainant's charge is central to the viability of a Title VII claim. Therefore, the Court considers both the right-to-sue letter that Mr. Toscano offers and the acknowledgment-of-settlement letter that Regions offers.[2]

"An employee must exhaust administrative remedies before filing a complaint of discrimination under Title VII of the Civil Rights Act." *Stamper v.*

---

[2] Mr. Toscano attached a copy of his "Notice of Right to Sue" letter from the EEOC to his first complaint. (Doc. 2, pp. 51-52). He references this document in his response to the motion to dismiss. (Doc. 65, pp. 3, 19).

*Duval Cty. Sch. Bd.*, 863 F.3d 1336, 1339 (11th Cir. 2017) (quoting *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001)). A plaintiff with a Title VII grievance pursues his administrative remedies by filing a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). "If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission" then the Commission "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge [] by the person claiming to be aggrieved." 42 U.S.C. § 2000e-5(f)(1). If a defendant contests the timeliness of a plaintiff's civil action, then the plaintiff bears the burden of proving that he filed his action within the ninety-day limit. *Green v. Union Foundary Co.*, 281 F.3d 1229, 1233–34 (11th Cir. 2002).

If a plaintiff's filing is not timely, then a district court may toll a statute of limitations if the court finds that "an inequitable event prevented the plaintiff from filing a timely action." *Patel v. Ga. Dept. of Behavioral Health & Developmental Disabilities*, 517 Fed. Appx. 750, 752 (11th Cir. 2017) (quoting *Justice v. United States,* 6 F.3d 1474, 1479 (11th Cir.1993) (internal quotation marks omitted)). The plaintiff bears the burden of proving circumstances that warrant equitable tolling. *Id.*

Mr. Toscano filed a charge with EEOC on May 27, 2014. (Doc. 56-1, p. 40). That EEOC charge covered the retaliatory and discriminatory conduct that Mr. Toscano alleges here to support his Title VII claim. (Doc. 53, pp. 30-31; Doc. 56-1, p. 40). On November 28, 2014, the EEOC issued a letter to Mr. Toscano entitled "Acknowledgment of Settlement" which stated that "[i]n view of the Agreement" between Mr. Toscano and Regions, the EEOC would "take no further actions on behalf of [Mr. Toscano] with respect to the above-referenced charge." (Doc. 56-1, p. 39). At Mr. Toscano's request, the EEOC issued a notice of right to sue for the same charge ten months later on September 29, 2015. (Doc. 2, p. 51). Mr. Toscano argues that this action is timely because he filed his state court complaint on December 31, 2015, within ninety days of receiving the letter notifying him of his right to sue. (Doc. 65, p. 19). Regions argues that Mr. Toscano's ninety day window began when he received the EEOC's acknowledgment-of-settlement letter, and that Mr. Toscano's Title VII claims are untimely. (Doc. 56-1, p. 15).

"When the aggrieved party knows EEOC has completed its efforts, the time for suit has come and the statute fixes its season as 90 days. This is a protection to the employer and is plainly there for its benefit alone." *Zambuto v. Am. Tel. & Tel.*

*Co.*, 544 F.3d 1333, 1335 (5th Cir. 1977).[3]  Consequently, the EEOC cannot extend the life of a charge by issuing a notice of right to sue after the EEOC already has given notice that it will take no action on the charge.  *See Stamper*, 863 F.3d at 1340 ("the Commission lacked the authority to revive Stamper's claim of discrimination; that is, neither the Commission nor the Department of Justice had the authority to issue Stamper a new notice of her right to sue.");  *Zambuto*, 544 F.2d at 1335 ("To the extent that EEOC has adopted a practice which places the commencement of this 90-day period within the claimant's power by bifurcating the statutory notice, it is an invalid procedure which is counter to the plain language of the statute and to the Congressional purpose undergirding it.").

"[A]n EEOC decision gives notice of final action if it provides 'unambiguous notice that the EEOC has terminated its administrative processing of the charge.'"  *Jones v. Wynne*, 266 Fed. Appx. 903, 905 (11th Cir. 2008) (quoting *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 245 (5th Cir.1980)).  The EEOC's acknowledgment-of-settlement letter was not equivocal, and Mr. Toscano could not have been misled about the fact that the EEOC would take no further action on his charge.  (*See* Doc. 56-1, p. 39).  The acknowledgment-of-settlement letter did not indicate that Mr. Toscano had a right to sue on his charge, but the

---

[3] *See Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent in the Eleventh Circuit Court of Appeals decisions that the Fifth Circuit Court of Appeals rendered before October 1, 1981).

reason for that omission is plain: the EEOC understood that Mr. Toscano had agreed to release his claims against Regions. The letter unambiguously informed Mr. Toscano that the administrative process was complete. At that juncture, the law assigned responsibility to Mr. Toscano for filing a timely lawsuit.[4]

The acknowledgment-of-settlement letter reached Mr. Toscano in late September 2014. (Doc. 56-1, pp. 37, 39). Accounting for the ninety days that Mr. Toscano had from receipt of this letter to file suit, he had roughly five months in which to assess the adequacy of Regions's performance under the SPA and the release. Mr. Toscano bears the burden of alleging circumstances that justify the application of equitable tolling to his claims. The Court concludes that he has not presented circumstances to justify that remedy. Mr. Toscano allowed more than a year to pass between the time he received the EEOC's letter informing him that it would take no further action on his charge and the time when he filed suit based, in part, on the conduct in his EEOC charge. Mr. Toscano's solicitation of a right-to-sue letter did not revive a claim that, by statute, already was extinguished. Consequently, Mr. Toscano's claims for Title VII retaliation and race discrimination are untimely. Therefore, the Court grants Regions's motion as to these claims and dismisses Counts I and II of the second amended complaint.

---

[4] There may be scenarios in which dilatory or bad-faith conduct by Regions in procuring the release could have warranted tolling of the statutory filing period to file, but Mr. Toscano specifically denies that the release was procured by fraud. (Doc. 65, p. 18).

### c. Mr. Toscano's Claim for Breach of Contract

The allegations supporting Mr. Toscano's breach-of-contract claim appear in Count VI of his second amended complaint. (Doc. 53, p. 39). Among these are Regions's alleged failure to release the vested funds in Mr. Toscano's 401K plan and to provide him with the employee rate for his COBRA payments. (Doc. 53, p. 41). As Regions points out, both Mr. Toscano's claim for COBRA coverage and his claim for 401K funds derive from employee benefit plans as defined by ERISA, a federal statute that preempts related state law claims. (Doc. 56-1, pp. 30-34). Mr. Toscano makes no response to Regions's ERISA preemption argument except to reiterate what he believes Regions owes him. (Doc. 65, p. 9).

Both Regions's 401K plan and the "Advantage Plan" that includes COBRA coverage expressly indicate that they are governed by ERISA. (Doc. 56-1, pp. 72-73, 78, 95-96).[5] Congress intended ERISA to completely preempt related state law causes of action. *See Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207–208 (2004). "[O]nce rights and responsibilities under ERISA are invoked, overlapping state law claims are necessarily preempted since they may conflict with ERISA's elaborate system of employee protections." *Anderson v. UNUM Provident Corp.*, 369 F.3d

---

[5] Regions attaches the relevant plan documents to its motion for summary judgment. (Doc. 56-1, pp. 41-97). The Court considers these documents for the same reasons it considers the SPA and release: the plan documents are undisputed and central to Mr. Toscano's breach of contract claim. *See Russo*, 634 Fed. Appx. at 775 n. 2.

1257, 1268 (11th Cir. 2004) (citing 29 U.S.C. § 1144(a)). "A state law claim is defensively preempted under ERISA if it *relates to* an ERISA plan." *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006) (citing 29 U.S.C. § 1144(a)) (emphasis original). "[I]f a state law claim arises out of the administration of benefits under a plan, the claim is preempted." *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1564 (11th Cir. 1987).

Here, ERISA preempts Mr. Toscano's claims for COBRA coverage and 401K funds. Therefore, the Court dismisses Mr. Toscano's breach of contract claim to the extent it is premised on Regions's alleged failure to provide benefits accruing under ERISA employee benefits plans.

In addition, the Court concludes that Mr. Toscano cannot proceed with his breach of contract action to the extent that he premises his claim on Regions's failure to provide him with outplacement services. (Doc. 65, p. 9). As a matter of simple contract interpretation, Mr. Toscano is not entitled to this benefit. The SPA differentiates benefits that become available when an employee is terminated without cause from benefits that become available when the employee is terminated as the result of a change in control. (Doc. 69-1, pp. 3-5). Outplacement services are listed only in the latter category. (Doc. 69-1, pp. 4-4). Because Mr. Toscano does not allege that his termination resulted from a change in control at Regions, he is not entitled to receive outplacement services, and Regions cannot be

in breach of the SPA for failing to provide this benefit. Accordingly the Court dismisses Mr. Toscano's breach of contract claim to the extent that it is premised on Regions's failure to provide him with outplacement services.

With these dismissals, only a portion of Mr. Toscano's claim for breach of contract survives. Mr. Toscano alleges that he is entitled to bonus compensation that Regions "routinely paid to executives with similar SPA Agreements when terminated without cause." (Doc. 53, p. 40). Section 4(a)(1) of the SPA lists those benefits and forms of compensation to which employees are entitled when Regions terminates their employment without cause. (Doc. 69-1, p. 3). That list includes "bonuses and incentive compensation to which [the employee is] entitled under the terms of the applicable bonus or incentive plans." (Doc. 69-1, p. 3). Neither party offers these plans, so the Court must accept as true Mr. Toscano's allegation that he is owed certain bonus payments. Mr. Toscano may pursue his breach-of-contract claim for compensation under section 4(a)(1) of the SPA to the extent the compensation or benefits sought are not covered by ERISA. (*See* Doc. 69-1, p. 3).

### d. Sufficiency of the Allegations Supporting Mr. Toscano's Claims for Retaliation under the Florida Civil Rights Act

Regions objects to Count V of the second amended complaint in so far as Mr. Toscano claims that Regions retaliated against him for reporting fraudulent business practices within the bank. Regions argues that reports of fraudulent

business practices do not fall within the scope of conduct protected by the Florida Civil Rights Act. (Doc. 56, p. 22). Mr. Toscano has not addressed Regions's arguments; he focuses instead on his allegations that Regions retaliated against him for reporting complaints of gender and race-based discrimination; activities which are covered by the act. (Doc. 65, pp. 23-26). Because Mr. Toscano does not appear to disagree with Regions's argument for partial dismissal, the Court dismisses Count V in so far as Mr. Toscano bases this claim on Regions's alleged retaliation against him for reporting fraudulent business practices within the bank.

### e. The Applicability of the Dodd-Frank Whistleblower Protections to Mr. Toscano's Internal Reports of Wrongdoing

In Count IV of his second amended complaint, Mr. Toscano brings a claim for retaliation in violation the Dodd-Frank Act's whistleblower provision, 15 U.S.C. § 78u-6(h). (Doc. 53, p. 35). Regions argues that Mr. Toscano is not entitled to invoke the protections of Dodd-Frank's whistleblower provision because the Dodd-Frank Act defines a "whistleblower" as someone who reports potential securities violations to the SEC. (Doc. 56-1, pp. 25-26 citing 15 U.S.C. § 78u-6(a)(6)). It is undisputed that Mr. Toscano only reported allegations of Regions's fraudulent business practices to persons within Regions and that he never reported his concerns to the SEC.

Mr. Toscano argues that despite the narrow statutory definition of the term "whistleblower," Dodd-Frank introduces ambiguity into that definition by listing disclosures required under Sarbanes-Oxley as a form of protected whistleblowing. (Doc. 65, pp. 27-28 citing l5 U.S.C. § 78u-6(h)(1)(A)(iii)). These Sarbanes-Oxley disclosures include whistleblowing that occurs only within a company. In 2011, the SEC seized on the ambiguity that Mr. Toscano cites and issued a regulation clarifying the agency's interpretation that the term "whistleblower." The regulation provides that the term as used in Dodd-Frank includes those who report internally in accordance with Sarbanes-Oxley without reporting to the SEC. *See* 17 C.F.R. § 240.21F-2(b)(1).

As the parties note in their briefs, a split has emerged between the Circuit Courts of Appeal over the propriety of the SEC's regulation. The Fifth Circuit has determined that Dodd-Frank's language is not ambiguous and that its whistleblower protections apply only when the whistleblower has reported alleged securities violations to the SEC. *Asadi v. G.E. Energy (USA), LLC*, 720 F.3d 620 (5th Cir. 2013). The Second and Ninth Circuits, by contrast, have concluded that Dodd-Frank's whistleblower protections apply when the whistleblower only reports internally. *See Berman v. Neo@Ogilvy LLC*, 801 F.3d 145 (2d Cir. 20l5); *Somers v. Digital Realty Trust, Inc.*, 850 F.3d 1045 (9th Cir. 2017). The Second Circuit has concluded that the language of Dodd Frank's whistleblower provision

is ambiguous and that the SEC's interpretation, extending whistleblower protections to those who only report internally, is entitled to *Chevron* deference. *See Berman*, 801 F.3d at 146. The Ninth Circuit, like the Fifth Circuit, has concluded that there is no ambiguity in Dodd-Frank's language, but the Ninth Circuit has determined that the whistleblower provision unambiguously applies to cases where whistleblowing occurs only within a company. *See Somers*, 850 F.3d at 1049.

The unresolved scope of the whistleblower protections has attracted the attention of the Eleventh Circuit, *see Duke v. Prestige Cruises International*, Case No. 16-15426, and more recently the Supreme Court, *see Digital Realty Trust, Inc. v. Somers*, 137 S. Ct. 2300 (2017). The Eleventh Circuit has stayed argument in *Duke v. Prestige Cruises* in light of the Supreme Court's decision to grant certiorari in *Digital Realty Trust v. Somers*. (*See* Case No. 16-15426, Doc. 01119700768, Aug. 23, 2017). Both of these cases squarely present the same question that the parties argue here: whether Dodd-Frank protects internal whistleblowers. Because either the Supreme Court or the Eleventh Circuit is likely to give the Court clear guidance in the near future on the question presented here, and given the Court's conclusion that Mr. Toscano is entitled to proceed on some of his other claims, the Court will defer ruling on the applicability of the Dodd-Frank whistleblower protections pending decisions in the above-noted cases.

### f. Regions's Motion to Strike Mr. Toscano's Jury Demand

Finally, Regions asks the Court to strike Mr. Toscano's jury demand. Regions points to paragraph 6(c) of the SPA, which states:

> **(c) *Waiver of Jury Trial*. To the extent permitted by law, you and the Company waive any and all rights to a jury trial with respect to any Employment Matter.**

(Doc. 57, p. 3; Doc. 69-1, p. 14) (emphasis in SPA). Mr. Toscano has not responded to Regions's motion to strike. As with the Court's review of agreements to release certain federal claims, the Court examines the circumstances surrounding the waiver of the right to a jury trial to ensure that the waiver was made knowingly and voluntarily. *See PNC Bank, Nat'l Ass'n v. Cedar Creek of E. Ala., LLC*, 2016 WL 3227053, at *3 (N.D. Ala. June 13, 2016) (citing *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 Fed. Appx. 820, 823 (11th Cir. 2006)). The factors that the Court considers are similar to those it considers when assessing the validity of a release of claims. *See Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 Fed. Appx. 820, 823–24 (11th Cir. 2006) ("In making this assessment, courts consider the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable.").

The SPA's provision is clearly titled "*Waiver of Jury Trial*." The waiver appears in bold print, separately from any other provision, and its language is

plain. (*See* Doc. 3, p. 16). As noted above, Mr. Toscano possesses the sophistication to perform an executive role in a large bank, a role that he performed for several years before to his termination. The parties have not informed the Court whether the waiver provision was negotiable. The Court assumes that Regions had greater bargaining power than Mr. Toscano, but this assumption does not negate the evidence that Mr. Toscano knew or should have known what he was agreeing to, and there is no evidence suggesting that Regions unfairly leveraged its bargaining power. Because Mr. Toscano does not offer the Court relevant considerations to the contrary, the Court finds that Mr. Toscano's waiver of a jury trial was knowing and voluntary. The Court, therefore, grants Regions's motion to strike Mr. Toscano's jury demand.

## IV. CONCLUSION

For the reasons explained above, the Court grants Regions's motion in part and dismisses Counts I and II of Mr. Toscano's second amended complaint. The Court dismisses Mr. Toscano's claim in Count V to the extent that he premises this claim on retaliation for his reports of fraudulent business practices. The Court also dismisses Mr. Toscano's claim in Count VI for breach of contract to the extent that he premises that claim on Regions's failure to provide outplacement services or benefits covered by ERISA. Finally, the Court strikes Mr. Toscano' jury demand

based on his contractual waiver of that right. The Court defers its decision on Mr.

Toscano's Dodd-Frank Whistleblower claim in Count IV.

**DONE** and **ORDERED** this March 28, 2018.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE